## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS

**FEDERAL TRADE COMMISSION,**

     **Plaintiff,**

     **v.**

**UNITED DEBT COUNSELORS, LLC, a limited liability company, formerly known as UNITED DEBT SERVICES, LLC, also d/b/a DEPARTMENT OF NEGOTIATIONS;**

**DAVID MELROSE, individually and as a member of United Debt Counselors, LLC;**

**KIRK LANAHAN, individually and as an officer of United Debt Counselors, LLC;**

**CORINNE MAPLES, individually and as an officer of United Debt Counselors, LLC;**

     **Defendants.**

**Case No.   4:17-CV-143**

**STIPULATED ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT**

       Plaintiff, the F ederal Trade Commission ("Commission" or "FTC"), filed its Complaint for Permanent Injunction and Other Equitable Relief ("Complaint"), pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), and the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6101-6108. The Commission and Defendants stipulate to the entry of this Stipulated Order For Permanent Injunction and Monetary Judgment ("Order") to resolve all matters in dispute in this action between them.

       **THEREFORE, IT IS ORDERED** as follows:

**FINDINGS**

1.      This Court has jurisdiction over this matter.

2.      The Complaint alleges that Defendants participated in deceptive acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45, and the Telemarketing Sales Rule, 16 C.F.R. Part 310, in connection with the sales and marketing of debt relief services.

3.      Defendants neither admit nor deny any of the allegations in the Complaint, except as specifically stated in this Order. Only for purposes of this action, Defendants admit the facts necessary to establish jurisdiction.

4.      Defendants waive any claim that they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agree to bear their own costs and attorney fees.

5.      Defendants and the Commission waive all rights to appeal or otherwise challenge or contest the validity of this Order.

**DEFINITIONS**

For the purpose of this Order, the following definitions apply:

A.      **"Assisting others"** includes:

1.      performing customer service functions, including receiving or responding to consumer complaints;

2.      formulating or providing, or arranging for the formulation or provision of, any advertising or marketing material, including any telephone sales script, direct mail solicitation, or the design, text, or use of images of any Internet website, email, or other electronic communication;

3.      formulating or providing, or arranging for the formulation or provision of, any marketing support material or service, including web or Internet Protocol addresses or domain name registration for any Internet websites, affiliate marketing services, or media placement services;

4.      providing names of, or assisting in the generation of, potential customers;

5.      performing marketing, billing, or payment services of any kind; or

6.      acting or serving as an owner, officer, director, manager, or principal of any entity.

B.      "**Credit repair services**" means selling, providing, or performing any service (or representing that such service can or will be sold, provided, or performed) through the use of any instrumentality of interstate commerce or the mails, in return for the payment of money or other valuable consideration, for the express or implied purpose of (i) improving any consumer's credit record, credit history, or credit rating; or (ii) providing advice or assistance to any consumer with regard to any activity or service described in clause (i).

C.      "**Debt relief service**" means any program or service represented, directly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt between a person and one or more unsecured creditors, including, but not limited to: (a) a reduction in the balance, interest rate, or fees owed by a person to an unsecured creditor or debt collector; or (b) a combination of unsecured loans, debts, or obligations into one or more new loans, debts, or obligations.

D.      "**Defendants**" means all of the Individual Defendants and the Corporate Defendant, individually, collectively, or in any combination.

1.      "**Corporate Defendant**" means United Debt Counselors, LLC, a limited

liability company, formerly known as United Debt Services, LLC, also

d/b/a/ Department of Negotiations, and their successors and assigns.

2.      "**Individual Defendants**" means David Melrose, Kirk Lanahan, and

Corinne Maples.

E.      **"Face-to-Face Sales Presentation"** shall mean an in-person meeting between a

seller and a consumer that:

1.      includes a sales presentation by the seller who:

a.      is authorized to discuss and does discuss the material terms and

conditions of the sales offer and the goods or services;

b.      is able to respond during the sales meeting to the consumer's

questions or concerns regarding the material terms and conditions

of the sales offer and the goods or services; and

c.      clearly and conspicuously discloses:

i.      the total fees in dollars to purchase, receive, or use the debt

relief services. If the fees are a percentage of the amount a

consumer would save as a result of the debt relief services,

both the percentage and the estimated dollar amount it

represents must be disclosed;

ii.     all material restrictions, limitations, or conditions to

purchase, receive, or use the debt relief services;

Page 4 of 27

iii.    the amount of time necessary to achieve the represented results and, to the extent that the service may include a settlement offer to any of the consumer's creditors or debt collectors, the time by which the debt relief service provider will make a bona fide settlement offer to each of them;

iv.    to the extent that the service may include a settlement offer to any of the consumer's creditors or debt collectors, the amount of money or the percentage of each outstanding debt that the consumer must accumulate before the debt relief service provider will make a bona fide settlement offer to each of them;

v.    to the extent that any aspect of the debt relief service relies upon or results in the consumer's failure to make timely payments to creditors or debt collectors, that the use of the debt relief service will likely adversely affect the consumer's creditworthiness, may result in the consumer being subject to collections or sued by creditors or debt collectors, and may increase the amount of money the consumer owes due to the accrual of fees and interest;

vi.    to the extent that the debt relief service requests or requires the consumer to place funds in an account at an insured

financial institution, that the consumer owns the funds held in the account, the consumer may withdraw from the debt relief service at any time without penalty, and, if the consumer withdraws, the consumer must receive all funds in the account;

vii.    the material terms and conditions of any refund, cancellation, exchange, or repurchase policy, including when refunds are not given; and

viii.   the timing, amount, and method of the seller's collection of fees, costs, and charges.

2.    complies with the FTC's Cooling Off Rule, 16 C.F.R. Part 429, a copy of which is attached as Attachment A to this Order.

F.    **"Financial product or service"** means any product, service, plan, or program represented, expressly or by implication, to:

1.    provide to any consumer, arrange for any consumer to receive, or assist any consumer in receiving, a loan or other extension of credit;

2.    provide to any consumer, arrange for any consumer to receive, or assist any consumer in receiving, credit, debit, or stored value cards;

3.    provide to any consumer, arrange for any consumer to receive, or assist any consumer in receiving, credit repair services; or

4.    provide to any consumer, arrange for any consumer to receive, or assist any consumer in receiving, any mortgage assistance relief service or debt

relief service.

G.      "**Mortgage Assistance Relief Service**" means any service, plan, or program, offered or provided to the consumer in exchange for consideration, that is represented, expressly or by implication, to assist or attempt to assist the consumer with any of the following:

1.      stopping, preventing, or postponing any mortgage or deed of trust foreclosure sale for the consumer's dwelling, any repossession of the consumer's dwelling, or otherwise saving the consumer's dwelling from foreclosure or repossession;

2.      negotiating, obtaining, or arranging a modification of any term of a dwelling loan, including a reduction in the amount of interest, principal balance, monthly payments, or fees;

3.      obtaining any forbearance or modification in the timing of payments from any dwelling loan holder or servicer on any dwelling loan;

4.      negotiating, obtaining, or arranging any extension of the period of time within which the consumer may:

   a.      cure his or her default on a dwelling loan,

   b.      reinstate his or her dwelling loan,

   c.      redeem a dwelling, or

   d.      exercise any right to reinstate a dwelling loan or redeem a dwelling;

5.      obtaining any waiver of an acceleration clause or balloon payment contained in any promissory note or contract secured by any dwelling; or

6.    negotiating, obtaining, or arranging:

    a.    a short sale of a dwelling,

    b.    a deed-in-lieu of foreclosure, or

    c.    any other disposition of a dwelling other than a sale to a third party who is not the dwelling loan holder.

H.    "**Mortgage assistance relief service provider**" means any person that provides, offers to provide, or arranges for others to provide, any mortgage assistance relief service other than the dwelling loan holder, the servicer of a dwelling loan, or any agent or contractor of such individual or entity.

I.    "**Telemarketing**" means any plan, program, or campaign which is conducted to induce the purchase of goods or services by use of one or more telephones, and which involves a telephone call, whether or not covered by the Telemarketing Sales Rule.

## ORDER

## I.    RESTRICTIONS ON REQUESTING OR RECEIVING ADVANCE FEES FOR DEBT RELIEF SERVICES

**IT IS ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from requesting or receiving payment of any fee or consideration for any debt relief service until and unless either:

A.    Defendant has made a Face-to-Face Sales Presentation to the consumer; or

B.    Defendant has (a) renegotiated, settled, reduced, or otherwise altered the terms of at least one debt pursuant to a settlement agreement, debt management plan, or other such valid

contractual agreement executed by the consumer, or (b) combined unsecured loans, debts, or obligations into one or more new loans, debts, or obligations; and the consumer has made at least one payment pursuant to that settlement agreement, debt management plan, or other valid contractual agreement between the consumer and the creditor or debt collector. To the extent that debts enrolled in a service are renegotiated, settled, reduced, combined, or otherwise altered individually, the fee or consideration either:

1.      bears the same proportional relationship to the total fee for renegotiating, settling, reducing, combining, or altering the terms of the entire debt balance as the individual debt amount bears to the entire debt amount. The individual debt amount and the entire debt amount are those owed at the time the debt was enrolled in the service; or

2.      is a percentage of the amount saved as a result of the renegotiation, settlement, reduction, combination, or alteration. The percentage charged cannot change from one individual debt to another. The amount saved is the difference between the amount owed at the time the debt was enrolled in the service and the amount actually paid to satisfy the debt.

## II.     PROHIBITION AGAINST CERTAIN REPRESENTATIONS RELATING TO DEBT RELIEF PROGRAMS OR SERVICES

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, offering for sale, or selling of any debt relief program or service, are permanently restrained and enjoined from:

     A.     misrepresenting, or assisting others in misrepresenting, expressly or by implication:

     1.     the amount of money or the percentage of each outstanding debt that the consumer must accumulate before the provider of the debt relief service will initiate attempts with the consumer's creditors or debt collectors or make a bona fide offer to negotiate, settle, or modify the terms of the consumer's debt;

     2.     that consumers who purchase a debt relief program or service will be provided a financial account that only the consumer controls; and

     3.     that a debt relief service is offered or provided by a non-profit entity; and

     B.     representing, or assisting others in representing, expressly or by implication, the amount or percentage of money that consumers or any particular consumer who purchases Defendants' program or service typically saves, unless such representation:

     1.     is based on the amount of debt owed at the time of enrollment, rather than the amount at the time of settlement, and accounts for (i) increases in debt levels from creditor fees or interest charges that accrue during the period of the program, and (ii) fees the consumer pays to the provider;

     2.     includes the experiences of all of the provider's past consumers, including those who dropped out or otherwise failed to complete the program; and

     3.     includes all of the debts enrolled by each consumer in the program.

## III.    REQUIREMENTS FOR CONSUMER SAVINGS ACCOUNTS FOR DEBT RELIEF SERVICES

     IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, employees,

and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, offering for sale, or selling of any debt relief service, are permanently restrained and enjoined from requiring a consumer to make any payment under the terms of a debt relief service agreement, unless:

     A.     all such payments are made into an account at an insured financial institution;

     B.     the consumer owns the funds held in the account and is paid accrued interest on the account, if any;

     C.     the entity administering the account is not owned or controlled by, or in any way affiliated with, the debt relief service;

     D.     the entity administering the account does not give or accept any money or other compensation in exchange for referrals of business involving the debt relief service; and

     E.     the consumer may withdraw from the debt relief service at any time without penalty and, within seven (7) days of withdrawal, must receive all funds deposited into the account, other than funds paid to the consumer's creditors or debt collectors for negotiated settlement agreements, or earned by Defendants through completion of the following:

          1.     the debt relief service has renegotiated, settled, reduced, or otherwise altered the terms of at least one debt pursuant to a settlement agreement, debt management plan, or other such valid contractual agreement executed by the consumer;

2.      the consumer has made at least one payment pursuant to that settlement agreement, debt management plan, or other valid contractual agreement between the consumer and the creditor or debt collector; and

3.      to the extent that debts enrolled in a service are renegotiated, settled, reduced, or otherwise altered individually, the fee or consideration either:

    a.      bears the same proportional relationship to the total fee for renegotiating, settling, reducing, or altering the terms of the entire debt balance as the individual debt amount bears to the entire debt amount. The individual debt amount and the entire debt amount are those owed at the time the debt was enrolled in the service; or

    b.      is a percentage of the amount saved as a result of the renegotiation, settlement, reduction, or alteration. The percentage charged cannot change from one individual debt to another. The amount saved is the difference between the amount owed at the time the debt was enrolled in the service and the amount actually paid to satisfy the debt.

## IV. PROHIBITION AGAINST MISREPRESENTATIONS RELATING TO FINANCIAL PRODUCTS OR SERVICES

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, offering for sale, or selling of any financial product or service, are permanently restrained and enjoined from misrepresenting, or assisting others in

misrepresenting, expressly or by implication:

      A.      the rate or percentage of consumers who complete, achieve success, cancel, or drop out of Defendants' offered product or service;

      B.      the amount of time in which consumers typically complete the Defendants' offered product or service;

      C.      the amount of time necessary for any particular consumer to achieve any represented results;

      D.      the amount or percentage of money that consumers who purchase Defendants' product or service typically save;

      E.      the amount or percentage of money that any particular consumer who purchases Defendants' product or service will likely save;

      F.      the timing, amount, and method that Defendants will use to collect their fees;

      G.      any material aspect of the nature or terms of any refund, cancellation, exchange, or repurchase policy, including the likelihood of a consumer obtaining a full or partial refund, or the circumstances in which a full or partial refund will be granted to the consumer;

      H.      that the experience represented in a testimonial of the product, service, plan, or program represents the person's actual experience resulting from the use of the product, service, plan, or program under the circumstances depicted in the advertisement;

      I.      the ability to improve or otherwise affect a consumer's credit record, credit history, credit rating, or ability to obtain credit, including that a consumer's credit record, credit history, credit rating, or ability to obtain credit can be improved by permanently removing current, accurate negative information from the consumer's credit record or history;

J.      the effect of the service on a consumer's creditworthiness;

K.      the effect of the service on collection efforts of the consumer's creditors or debt collectors; and

L.      any other fact material to consumers concerning any financial product or service, such as: the total costs; any material restrictions, limitations, or conditions; or any material aspect of its performance, efficacy, nature, or central characteristics.

## V.      PROHIBITION AGAINST UNSUBSTANTIATED CLAIMS

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the sale of any product or service, are permanently restrained and enjoined from making any representation or assisting others in making any representation, expressly or by implication, about the benefits, performance, or efficacy of any product or service, unless the representation is non-misleading, and at the time such representation is made, Defendants possess and rely upon competent and reliable evidence that is sufficient in quality and quantity based on standards generally accepted in the relevant fields, when considered in light of the entire body of relevant and reliable evidence, to substantiate that the representation is true.

## VI.      MONETARY JUDGMENT

**IT IS FURTHER ORDERED** that:

A.      Judgment in the amount of Nine Million Dollars ($9,000,000) is entered in favor of the Commission against the Individual Defendants and the Corporate Defendant, jointly and severally, as equitable monetary relief.

B.      To partially satisfy the judgment specified in Subsection A. above, Defendants

United Debt Counselors, LLC and David Melrose are ordered to pay to the Commission Five

Hundred Thousand Dollars ($500,000), jointly or severally, in installments as follows:

      1.      Within seven days of entry of this Order, Defendants United Debt

Counselors, LLC and David Melrose, jointly or severally, shall pay to the

Commission an installment of One Hundred Ten Thousand Dollars

($110,000) ("first installment"), which, as these Defendants stipulate, their

undersigned counsel holds in escrow for no purpose other than payment to

the Commission.

      2.      Within 30 days of entry of this Order, Defendants United Debt

Counselors, LLC and David Melrose, jointly or severally, shall pay to the

Commission an installment of Seventy Eight Thousand Dollars ($78,000)

("second installment").

      3.      Within 60 days of entry of this Order, Defendants United Debt

Counselors, LLC and David Melrose, jointly or severally, shall pay to the

Commission an additional installment of Seventy Eight Thousand Dollars

($78,000) ("third installment").

      4.      Within 90 days of entry of this Order, Defendants United Debt

Counselors, LLC and David Melrose, jointly or severally, shall pay to the

Commission an additional installment of Seventy Eight Thousand Dollars

($78,000) ("fourth installment").

      5.      Within 120 days of entry of this Order, Defendants United Debt

Counselors, LLC and David Melrose, jointly or severally, shall pay to the Commission an additional installment of Seventy Eight Thousand Dollars ($78,000) ("fifth installment").

6.      Within 150 days of entry of this Order, Defendants United Debt Counselors, LLC and David Melrose, jointly or severally, shall pay to the Commission an additional installment of Seventy Eight Thousand Dollars ($78,000) ("sixth installment").

7.      All payments required by this Order shall be made by electronic funds transfers in accordance with the instructions previously provided by a representative of the Commission.

8.      Upon the timely payment of all installments totaling Five Hundred Thousands Dollars ($500,000), the remainder of the judgment is suspended as to Defendants United Debt Counselors, LLC and David Melrose, subject to the Subsections below.

9.      In the event of any default in paying the first installment or any subsequent installment, which default continues for ten (10) days beyond the due date of the installment, the entire remaining balance of the judgment set forth in Subection A. above, together with interest, as computed pursuant to 28 U.S.C. § 1961 from the entry date of this Order, shall immediately become due and payable.

C.      To partially satisfy the judgment specified in Subsection A. above, Defendant Corinne Maples is ordered to pay to the Commission Ten Thousand Dollars ($10,000), which, as

Defendant stipulates, her undersigned counsel holds in escrow for no purpose other than payment

to the Commission. Such payment must be made within 7 days of entry of this Order by

electronic fund transfer in accordance with instructions previously provided by a representative

of the Commission. Upon such payment, the remainder of the judgment is suspended as to this

defendant, subject to the Subsections below.

D.      The judgment against Defendant Kirk Lanahan is suspended in its entirety as to

this defendant, subject to the Subsections below.

E.      The Commission's agreement to the suspension of part of the judgment is

expressly premised upon the truthfulness, accuracy, and completeness of Defendants' sworn

financial statements and related documents (collectively, "financial representations") submitted

to the Commission, namely:

1.      the Financial Statement of Individual Defendant David Melrose signed on

July 18, 2016, including the attachments, and the supplements received on

or about October 4, 11, and 25, 2016;

2.      the Financial Statement of Individual Defendant Corinne Maples signed

on June 27, 2016, including the attachments;

3.      the Financial Statement of Individual Defendant Kirk Lanahan signed on

June 29, 2016, including the attachments;

4.      the Financial Statement of Corporate Defendant United Debt Services,

LLC, signed by Corinne Maples, Senior Vice President on June 27, 2016,

including the attachments;

F.      The suspension of the judgment will be lifted as to any Defendant if, upon motion by the Commission, the Court finds that said Defendant failed to disclose any material asset, materially misstated the value of any asset, or made any other material misstatement or omission in the financial representations identified above.

G.      If the suspension of the judgment is lifted, the judgment becomes immediately due as to that Defendant in the amount specified in Subsection A. above (which the parties stipulate only for purposes of this Section represents the consumer injury alleged in the Complaint), less any payment previously made pursuant to this Section, plus interest computed from the date of entry of this Order.

## VII.    ADDITIONAL MONETARY PROVISIONS

**IT IS FURTHER ORDERED** that:

A.      Defendants relinquish dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

B.      The facts alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the Commission, including in a proceeding to enforce its rights to any payment or monetary judgment pursuant to this Order, such as a nondischargeability complaint in any bankruptcy case.

C.      The facts alleged in the Complaint establish all elements necessary to sustain an action by the Commission pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

D.      Defendants acknowledge that their Taxpayer Identification Numbers (Social Security Numbers or Employer Identification Numbers), which Defendants previously submitted

to the Commission, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. §7701.

E.      All money paid to the Commission pursuant to this Order may be deposited into a fund administered by the Commission or its designee to be used for equitable relief, including consumer redress and any attendant expenses for the administration of any redress fund. If a representative of the Commission decides that direct redress to consumers is wholly or partially impracticable or money remains after redress is completed, the Commission may apply any remaining money for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defendants' practices alleged in the Complaint. Any money not used for such equitable relief is to be deposited to the U.S. Treasury as disgorgement. Defendants have no right to challenge any actions the Commission or its representatives may take pursuant to this Subsection.

## VIII.   CONSUMER INFORMATION

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from, directly or indirectly:

A.      failing to provide sufficient consumer information to enable the Commission to efficiently administer consumer redress. If a representative of the Commission requests in writing any information related to redress, Defendants must provide it, in the form prescribed by the Commission, within 14 days; and

B.      disclosing to third parties consumer information, including the name, address,

telephone number, email address, social security number, other identifying information, or any

data that enables access to a consumer's account (including a credit card, bank account, or other

financial account), that any Defendant obtained prior to entry of this Order in connection with

the marketing or sale of debt relief services.

## IX.    ORDER ACKNOWLEDGMENTS

**IT IS FURTHER ORDERED** that Defendants obtain acknowledgments of receipt of

this Order:

A.    Each Defendant, within 7 days of entry of this Order, must submit to the

Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.    For 10 years after entry of this Order, each Individual Defendant for any business

that such Defendant, individually or collectively with any other Defendants, is the majority

owner or controls directly or indirectly, and Corporate Defendant, must deliver a copy of this

Order to:

1.    all principals, officers, directors, and LLC managers and members;

2.    all employees, agents, and representatives who participate in conduct

related to the subject matter of the Order; and

3.    any business entity resulting from any change in structure as set forth in

the Section titled Compliance Reporting.

Delivery must occur within 7 days of entry of this Order for current personnel. For all others,

delivery must occur before they assume their responsibilities.

C.      From each individual or entity to which a Defendant delivered a copy of this

Order, that Defendant must obtain, within 30 days, a signed and dated acknowledgment of

receipt of this Order.

## X.      COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that Defendants make timely submissions to the

Commission:

A.      One year after entry of this Order, each Defendant must submit a compliance

report, sworn under penalty of perjury:

1.      Each Defendant must: (a) identify the primary physical, postal, and email

address and telephone number, as designated points of contact, which

representatives of the Commission may use to communicate with that Defendant;

(b) identify all of that Defendant's businesses by all of their names, telephone

numbers, and physical, postal, email, and Internet addresses; (c) describe the

activities of each business, including the goods and services offered, the means of

advertising, marketing, and sales, and the involvement of any other Defendant

(which Individual Defendants must describe if they know or should know due to

their own involvement); (d) describe in detail whether and how that Defendant is

in compliance with each Section of this Order; and (e) provide a copy of each

Order Acknowledgment obtained pursuant to this Order, unless previously

submitted to the Commission.

2.      Additionally, each Individual Defendant must: (a) identify all telephone

numbers and all physical, postal, email and Internet addresses, including all

residences; (b) identify all business activities, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest; and (c) describe in detail such Defendant's involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership.

B.      For 10 years after entry of this Order, each Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1.      Each Defendant must report any change in: (a) any designated point of contact; or (b) the structure of any Corporate Defendant or any entity that Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

2.      Additionally, each Individual Defendant must report any change in: (a) name, including aliases or fictitious name, or residence address; or (b) title or role in any business activity, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest, and identify the name, physical address, and any Internet address of the business or entity.

C.      Each Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Defendant within 14 days of its filing.

D.      Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.      Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580. The subject line must begin: FTC v. United Debt Counselors, LLC, Matter No. _____.

## XI.    RECORDKEEPING

**IT IS FURTHER ORDERED** that Defendants must create certain records for 20 years after entry of the Order, and retain each such record for 5 years. Specifically, Corporate Defendant in connection with the sale of any financial product or service and each Individual Defendant for any business that such Defendant, individually or collectively with any other Defendants, is a majority owner or controls directly or indirectly, must create and retain the following records:

A.      Accounting records showing the revenues from all goods or services sold;

B.      Personnel records showing, for each person providing services, whether as an employee or otherwise, that person's: name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.      Records documenting the amounts of consumers' enrolled debt, payments made to Defendants, and payments made to settle consumers' debts;

D.      Records of all consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

E.      All records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission; and

F.      A copy of each unique advertisement or other marketing material.

## XII.   COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring Defendants' compliance with this Order, including any failure to transfer any assets as required by this Order:

A.      Within 14 days of receipt of a written request from a representative of the Commission, each Defendant must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying. The Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.       For matters concerning this Order, the Commission is authorized to communicate directly with each Defendant. Each Defendant must permit representatives of the Commission to interview any employee or other person affiliated with any Defendant who has agreed to such an interview. The person interviewed may have counsel present.

C.      The Commission may use all other lawful means, including posing, through its representatives, as consumers, suppliers, or other individuals or entities, to Defendants, or any

individual or entity affiliated with Defendants, without the necessity of identification or prior notice. Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

D.      Upon written request from a representative of the Commission, any consumer reporting agency must furnish consumer reports concerning Individual Defendants, pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. §1681b(a)(1).

## XIII.   RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

**SIGNED this 15th day of March, 2017.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

**SO STIPULATED AND AGREED:**

**FOR PLAINTIFF:**
**FEDERAL TRADE COMMISSION**

*/s/ Eric N. Roberson*                           Date: 02 / 24 / 2017
_____
ERIC N. ROBERSON
Texas Bar #00792803
Federal Trade Commission
1999 Bryan Street, Suite 200
Dallas, Texas 75201
eroberson@ftc.gov
Telephone:     (214) 979-9362
Facsimile:     (214) 953-3079


**FOR DEFENDANTS:**

_____                  Date:  2/15/17
ROBBY H. BIRNBAUM, ESQ.
Fl Bar # 175889
Greenspoon Marder, P.A.
100 West Cypress Creek Road, Suite 700
Fort Lauderdale, FL 33309
Robby.Birnbaum@gmlaw.com
Telephone:     (954) 343-6959
Facsimile       (954) 343-6960
Counsel for United Debt Counselors, LLC,
David Melrose, Kirk Lanahan, and Corinne Maples

**DEFENDANTS:   United Debt Counselors, LLC,**
**David Melrose, Kirk Lanahan, and Corinne Maples**

_____                  Date:  2/10/2017
DAVID MELROSE, INDIVIDUALLY
AND AS A MEMBER OF UNITED DEBT
COUNSELORS, LLC


Page 26 of 27

_____          Date: 2 - 10 - 17
KIRK LANAHAN, INDIVIDUALLY
AND AS AN OFFICER OF UNITED DEBT
COUNSELORS, LLC

_____          Date: 2/10/2017
CORINNE MAPLES, INDIVIDUALLY
AND AS AN OFFICER OF UNITED DEBT
COUNSELORS, LLC

Page 27 of 27

# ATTACHMENT "A"

Title 16: Commercial Practices

---

# PART 429—RULE CONCERNING COOLING-OFF PERIOD FOR SALES MADE AT HOMES OR AT CERTAIN OTHER LOCATIONS

---

**Contents**
§429.0   Definitions.
§429.1   The Rule.
§429.2   Effect on State laws and municipal ordinances.
§429.3   Exemptions.

---

AUTHORITY: Sections 1-23, FTC Act, 15 U.S.C. 41-58.

# §429.0   Definitions.

For the purposes of this part the following definitions shall apply:

(a) *Door-to-Door Sale*—A sale, lease, or rental of consumer goods or services in which the seller or his representative personally solicits the sale, including those in response to or following an invitation by the buyer, and the buyer's agreement or offer to purchase is made at a place other than the place of business of the seller (*e.g.,* sales at the buyer's residence or at facilities rented on a temporary or short-term basis, such as hotel or motel rooms, convention centers, fairgrounds and restaurants, or sales at the buyer's workplace or in dormitory lounges), and which has a purchase price of $25 or more if the sale is made at the buyer's residence or a purchase price of $130 or more if the sale is made at locations other than the buyer's residence, whether under single or multiple contracts. The term *door-to-door sale* does not include a transaction:

   (1) Made pursuant to prior negotiations in the course of a visit by the buyer to a retail business establishment having a fixed permanent location where the goods are exhibited or the services are offered for sale on a continuing basis; or

   (2) In which the consumer is accorded the right of rescission by the provisions of the Consumer Credit Protection Act (15 U.S.C. 1635) or regulations issued pursuant thereto; or

   (3) In which the buyer has initiated the contact and the goods or services are needed to meet a bona fide immediate personal emergency of the buyer, and the buyer furnishes the

seller with a separate dated and signed personal statement in the buyer's handwriting describing the situation requiring immediate remedy and expressly acknowledging and waiving the right to cancel the sale within 3 business days; or

(4) Conducted and consummated entirely by mail or telephone; and without any other contact between the buyer and the seller or its representative prior to delivery of the goods or performance of the services; or

(5) In which the buyer has initiated the contact and specifically requested the seller to visit the buyer's home for the purpose of repairing or performing maintenance upon the buyer's personal property. If, in the course of such a visit, the seller sells the buyer the right to receive additional services or goods other than replacement parts necessarily used in performing the maintenance or in making the repairs, the sale of those additional goods or services would not fall within this exclusion; or

(6) Pertaining to the sale or rental of real property, to the sale of insurance, or to the sale of securities or commodities by a broker-dealer registered with the Securities and Exchange Commission.

(b) *Consumer Goods or Services*—Goods or services purchased, leased, or rented primarily for personal, family, or household purposes, including courses of instruction or training regardless of the purpose for which they are taken.

(c) *Seller*—Any person, partnership, corporation, or association engaged in the door-to-door sale of consumer goods or services.

(d) *Place of Business*—The main or permanent branch office or local address of a seller.

(e) *Purchase Price*—The total price paid or to be paid for the consumer goods or services, including all interest and service charges.

(f) *Business Day*—Any calendar day except Sunday or any federal holiday (e.g., New Year's Day, Presidents' Day, Martin Luther King's Birthday, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans' Day, Thanksgiving Day, and Christmas Day.)

[60 FR 54186, Oct. 20, 1995, as amended at 80 FR 1332, Jan. 9, 2015]

# §429.1   The Rule.

In connection with any door-to-door sale, it constitutes an unfair and deceptive act or practice for any seller to:

(a) Fail to furnish the buyer with a fully completed receipt or copy of any contract pertaining to such sale at the time of its execution, which is in the same language, e.g., Spanish, as that principally used in the oral sales presentation and which shows the date of the transaction and contains the name and address of the seller, and in immediate proximity to the space reserved in

the contract for the signature of the buyer or on the front page of the receipt if a contract is not used and in bold face type of a minimum size of 10 points, a statement in substantially the following form:

"You, the buyer, may cancel this transaction at any time prior to midnight of the third business day after the date of this transaction. See the attached notice of cancellation form for an explanation of this right."

The seller may select the method of providing the buyer with the duplicate notice of cancellation form set forth in paragraph (b) of this section, *provided however,* that in the event of cancellation the buyer must be able to retain a complete copy of the contract or receipt. Furthermore, if both forms are not attached to the contract or receipt, the seller is required to alter the last sentence in the statement above to conform to the actual location of the forms.

(b) Fail to furnish each buyer, at the time the buyer signs the door-to-door sales contract or otherwise agrees to buy consumer goods or services from the seller, a completed form in duplicate, captioned either "NOTICE OF RIGHT TO CANCEL" or "NOTICE OF CANCELLATION," which shall (where applicable) contain in ten point bold face type the following information and statements in the same language, e.g., Spanish, as that used in the contract.

# Notice of Cancellation

[enter date of transaction]


(Date)

You may CANCEL this transaction, without any Penalty or Obligation, within THREE BUSINESS DAYS from the above date.

If you cancel, any property traded in, any payments made by you under the contract or sale, and any negotiable instrument executed by you will be returned within TEN BUSINESS DAYS following receipt by the seller of your cancellation notice, and any security interest arising out of the transaction will be cancelled.

If you cancel, you must make available to the seller at your residence, in substantially as good condition as when received, any goods delivered to you under this contract or sale, or you may, if you wish, comply with the instructions of the seller regarding the return shipment of the goods at the seller's expense and risk.

If you do make the goods available to the seller and the seller does not pick them up within 20 days of the date of your Notice of Cancellation, you may retain or dispose of the goods without any further obligation. If you fail to make the goods available to the

seller, or if you agree to return the goods to the seller and fail to do so, then you remain liable for performance of all obligations under the contract.

To cancel this transaction, mail or deliver a signed and dated copy of this Cancellation Notice or any other written notice, or send a telegram, to [*Name of seller*], at [*address of seller's place of business*] NOT LATER THAN MIDNIGHT OF [*date*].

I HEREBY CANCEL THIS TRANSACTION.

(Date)
(Buyer's signature)

(c) Fail, before furnishing copies of the "Notice of Cancellation" to the buyer, to complete both copies by entering the name of the seller, the address of the seller's place of business, the date of the transaction, and the date, not earlier than the third business day following the date of the transaction, by which the buyer may give notice of cancellation.

(d) Include in any door-to-door contract or receipt any confession of judgment or any waiver of any of the rights to which the buyer is entitled under this section including specifically the buyer's right to cancel the sale in accordance with the provisions of this section.

(e) Fail to inform each buyer orally, at the time the buyer signs the contract or purchases the goods or services, of the buyer's right to cancel.

(f) Misrepresent in any manner the buyer's right to cancel.

(g) Fail or refuse to honor any valid notice of cancellation by a buyer and within 10 business days after the receipt of such notice, to: (i) Refund all payments made under the contract or sale; (ii) return any goods or property traded in, in substantially as good condition as when received by the seller; (iii) cancel and return any negotiable instrument executed by the buyer in connection with the contract or sale and take any action necessary or appropriate to terminate promptly any security interest created in the transaction.

(h) Negotiate, transfer, sell, or assign any note or other evidence of indebtedness to a finance company or other third party prior to midnight of the fifth business day following the day the contract was signed or the goods or services were purchased.

(i) Fail, within 10 business days of receipt of the buyer's notice of cancellation, to notify the buyer whether the seller intends to repossess or to abandon any shipped or delivered goods.

[37 FR 22934, Oct. 26, 1972, as amended at 38 FR 30105, Nov. 1, 1973; 38 FR 31828, Nov. 19, 1973; 53 FR 45459, Nov. 10, 1988; 60 FR 54186, Oct. 20, 1995]

# §429.2   Effect on State laws and municipal ordinances.

(a) The Commission is cognizant of the significant burden imposed upon door-to-door sellers by the various and often inconsistent State laws that provide the buyer the right to cancel a door-to-door sales transaction. However, it does not believe that this constitutes sufficient justification for preempting all of the provisions of such laws and the ordinances of the political subdivisions of the various States. The rulemaking record in this proceeding supports the view that the joint and coordinated efforts of both the Commission and State and local officials are required to insure that consumers who have purchased from a door-to-door seller something they do not want, do not need, or cannot afford, be accorded a unilateral right to rescind, without penalty, their agreements to purchase those goods or services.

(b) This part will not be construed to annul, or exempt any seller from complying with, the laws of any State or the ordinances of a political subdivision thereof that regulate door-to-door sales, except to the extent that such laws or ordinances, if they permit door-to-door selling, are directly inconsistent with the provisions of this part. Such laws or ordinances which do not accord the buyer, with respect to the particular transaction, a right to cancel a door-to-door sale that is substantially the same or greater than that provided in this part, which permit the imposition of any fee or penalty on the buyer for the exercise of such right, or which do not provide for giving the buyer a notice of the right to cancel the transaction in substantially the same form and manner provided for in this part, are among those which will be considered directly inconsistent.

[60 FR 54187, Oct. 20, 1995]

# §429.3   Exemptions.

(a) The requirements of this part do not apply for sellers of automobiles, vans, trucks or other motor vehicles sold at auctions, tent sales or other temporary places of business, provided that the seller is a seller of vehicles with a permanent place of business.

(b) The requirements of this part do not apply for sellers of arts or crafts sold at fairs or similar places.

[60 FR 54187, Oct. 20, 1995]